## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 CR 50019 | **DATE** | 8/15/2008 |
| **CASE TITLE** | United States vs. Shabaka Boyd | | |

**DOCKET ENTRY TEXT:**

Status hearing held. Defendant's motion for a hearing pursuant to Franks v. Delaware [13] is granted. Hearing is set for August 27, 2008, at 2:30 p.m. The United States' oral motion for excludable time from August 15, 2008 through and including August 27, 2008 pursuant to 18 U.S.C. § 3161(h)(1)(F) [X-E] is granted.

■[ For further details see text below.]

Docketing to mail notices.

00:10

### STATEMENT

Defendant was charged with possession of cocaine and crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), following the execution of a federal search at his residence. Special Agent Stephen P. Smith of the Bureau of Alcohol, Tobacco, Firearms, and Explosives submitted an affidavit in support of the search warrant. Smith indicated therein that the information in the affidavit was based on his participation in the investigation of this case and on information provided by other law enforcement agents. Smith's affidavit provided further, in pertinent part, as follows:

3. On March 6, 2008, the office of the Rockford Area Crimestoppers received an anonymous voicemail message regarding illegal drug sales that were taking place at 3735 Trilling Avenue, Apartment #204 in Rockford, Illinois. The caller stated that a black male named Shabaka Boyd ("Boyd"), who goes by the nickname "Tony," lives at that address, and is on parole for unlawful use of weapons. According to the caller, Boyd spent five years in prison for that offense. According to the caller, people come to Boyd's apartment to purchase crack cocaine, often in the early morning hours between 2:00 a.m. and 6:00 a.m. According to the caller, Boyd has a firearm, possibly a .40 caliber semi-automatic weapon, in his bedroom, where he also keeps his supply of crack cocaine. The caller also said that Boyd drives a 2000 dark green Chevrolet Monte Carlo.

4. On April 1, 2008, a confidential source ("CS") was asked by detectives of the Rockford Police Department's Narcotics Unit to approach 3735 trilling Avenue, Apartment #204 (hereinafter "Boyd's apartment") and attempt to purchase a quantity of crack cocaine. The CS has worked with members of the Rockford Police Department's Narcotics Unit in the past, and has provided information which has proven to be reliable. This CS has also made several controlled purchases at the direction of the Narcotics Unit detectives. The CS's information

**STATEMENT**

and/or controlled purchases have led to the issuance of multiple search warrants and the arrest of several individuals for drug and firearms-related offenses. On April 1, the CS, under the direction of detectives, approached Boyd's apartment and knocked on the door. A black male answered the door carrying a handgun in his right hand. The CS, who had been shown a photograph of Boyd by detectives before approaching the apartment, later identified the black male who answered the apartment door as the same person as in the photograph she had been shown. The CS asked Boyd if he was "straight," meaning did he have any drugs to sell. Boyd informed the CS that he/she had the wrong place, and slightly raised the firearm in the CS's direction. The CS then left and met with detectives to provide them with the information about what happened when she approached Boyd's apartment.

Smith further swore that records obtained in the investigation revealed that Shabaka Boyd was then on parole for a 2003 conviction for aggravated discharge of a firearm for which he had been sentenced to a ten-year term of imprisonment. According to Boyd's parole officer, Boyd had been living at 3735 Trilling Avenue, Apartment #204 in Rockford, Illinois, since October 1, 2006.

On April 2, 2008, United States Magistrate Judge P. Michael Mahoney issued a warrant to search 3735 Trilling Avenue, Apartment #204 finding probable cause to believe that the premises had concealed evidence of the crime of possession of a firearm by a convicted felon. Before the court is defendant's motion for  for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

ANALYSIS

Defendant moves for a Franks hearing contending that there were three material omissions from the affidavit in support of the search warrant that were made with reckless disregard for the truth: (1) that the CS appeared to be under the influence of drugs or alcohol, (2) that the CS could not describe the firearm that she saw in defendant's hand, and (3) that additional material omissions may have been made such as the CS's compensation and the CS's motivation for conducting the attempted controlled purchase of narcotics. In support of his motion, defendant attached his own affidavit wherein he states:

> On or about March 31, 2008, around 3 o'clock there was a knock at the door. I looked through the peak hole at a short black woman in her mid 30's. When I opened the door the woman's hair was wild, her eyes were red, she rubbed her nose and snorted loudly, and her jaw kept shifting back and forth. She could not be still. My first thought upon observing her was that she was very high on something. She said, "Are you straight?" I told her "I think you have the wrong house." She said "ok, I'm cool." Then she turned around and left. I never waived or flashed a gun at that woman. I had no reason to show [that] woman a gun.

The government opposes the motion contending that defendant has not made the substantial preliminary showing required to obtain a Franks hearing.

The Seventh Circuit recently reiterated the standard for obtaining a Franks hearing:

> The Supreme Court held in Franks v. Delaware that intentionally or recklessly submitting false statements in an affidavit supporting a search warrant violates the Fourth Amendment. In order to obtain such a hearing, a defendant must make a substantial preliminary showing that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). A defendant may also challenge an affidavit by demonstrating that the affiant intentionally or recklessly omitted material information.

**STATEMENT**

United States v. Hoffman, 519 F.3d 672, 675 (7th Cir. 2008).  Affidavits submitted in support of a warrant are presumed valid.  Jones, 208 F.3d at 607.  There is no requirement that a law enforcement officer seeking a search warrant include all information, or even all exculpatory information, in the affidavit submitted in support of the warrant request.  The defendant must present evidence of all necessary elements, rather than conclusions or suppositions.  See Franks, 438 U.S. at 170-72.  Because the showing that Franks requires even to obtain a hearing is difficult to make, Franks hearings are rare.  United States v. Swanson, 210 F.3d 788, 790 (7th Cir. 2000).

With regard to his first argument, defendant asserts that defendant was under the influence of drugs or alcohol when she purportedly observed defendant with a firearm.  This is based on defendant's own affidavit wherein he describes the CS's behavior and demeanor and concludes that "she was very high on something."  Defendant's apparent theory is that because the CS appeared very high to him, the detectives with the Narcotics Unit knew or should have known that she was high and her reliability was in question.  The court recognizes that there is no indication that the Narcotics Unit Detectives who interacted with the CS on the morning in question relayed any information regarding the CS's condition to Smith and ordinarily the focus is on the mental state of the affiant.  However, a deliberate or reckless omission of information incorporated into an affidavit by a government official who is not the affiant can be the basis for a Franks suppression.  See Franks, 438 U.S. at 164, n. 6 ("police could not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity."); see also United States v. Pritchard, 745 F.2d 1112 (7th Cir. 1984) ( Franks also covers a situation where one government agent recklessly misrepresents information to a second agent, who innocently includes false information in affidavit).  Thus, if the CS's reliability was obviously in question based on her being "very high on something" as defendant's affidavit suggests, and the detectives intentionally or recklessly disregarded that information by failing to inform Smith, the knowledge of the CS's condition would be imputed to Smith.  As for materiality, the reliability of the CS was central to the probable cause determination such that there is a reasonable probability that a different outcome would have resulted had omitted information been included in the affidavit.

With regard to the second argument, Special Agent Smith did not omit from his affidavit the fact that the CS did not provide a description of the firearm defendant wielded.  On the contrary, Smith affirmatively states that the CS indicated that "[a] black male answered the door carrying a handgun in his right hand" and that defendant "slightly raised the firearm in the CS's direction."  Thus, the Magistrate knew that the Cs's description of the object that she saw in defendant's right hand was limited to a "firearm" and a "handgun" and did not include a more exacting description of the weapon.  Therefore, there was no omission, let alone an omission of a material fact in reckless disregard for the truth.  Moreover, defendant makes no argument as to how an affirmative statement that the CS's description of the weapon in defendant's right hand was no more detailed than "handgun" or a "firearm," would have altered his probable cause determination.  After all, what is important is that there was information that defendant possessed a firearm, not what caliber, color, or manufacturer.  Thus, there is no substantial showing of materiality of the claimed omission to the granting of the search warrant.

The third argument is pure speculation unsupported by any offer of proof.  Therefore it is insufficient to warrant a Franks hearing.  See Franks, 438 U.S. at 170-71 (concluding that requisite substantial showing is not met by mere conclusory statements).  Moreover, there has been no showing that such omissions, if included in the affidavit, would have altered the probable cause determination.

CONCLUSION

Defendant is entitled to a Franks hearing because he has made a substantial preliminary showing that there may have been an intentional or reckless omission from the information given to the Magistrate in support of the search warrant that was material to its issuance.  The matter is set for hearing on August 27, 2008, at 2:30 p.m.